We'll hear the next case, Danielson v. Lee. Good morning. May it please the court, I'm Gwen Schoenfeld on behalf of Kahlil Danielson. I know that the three judges on this panel, you've all had these cases, depraved indifference, where they've challenged the sufficiency of the evidence. They've been going through the courts for years. But this one is different. It's different because of the status. It's also different because of the merits. In the status of this case, my client was arrested in this crime, a gang-related murder, when he was 17 years old. He's been in prison for nearly 20 years. He's now 37. This is not about letting anybody go free. This is not about anybody avoiding punishment. He is almost at the point now where he is eligible for parole, although the way the parole board works, that's certainly no guarantee. When does that occur, Ms. Schoenfeld? I think he goes before the parole board in March. But I'm sure you all are familiar with the reports that the parole boards often decline, and he does face a potential life sentence still for this crime. The other reason that this is different, and I know we have procedural hurdles here. We have to show cause and prejudice or actual innocence so that you can then consider the merits of his insufficiency of the evidence claim. What I'd like to do is jump to the merits. Can we go to some of the procedural hurdles? Oh, sure. We'll give you time, of course, to make your argument about the merits. I want to better understand, if I might, your argument about the procedural default for failure to exhaust. As I understand it, what you are saying is that, and correct me where I'm misunderstanding, that it would have been futile to try to exhaust that claim because of your client's failure to raise a contemporary objection deprived the New York courts of jurisdiction over his claim so that what you want us to do is to find that his earlier default excuses his later default. Am I understanding correctly? If I understand the question correctly, he defaulted at the trial level because it was before any of these cases, Sanchez, etc., had come down. Then there was a later default before the court of appeals. He did raise it before the appellate division, not before the court of appeals, and that is where I'm saying his default should be excused for cause because it would have been futile to raise it before the court of appeals because they had no jurisdiction to consider the claim. But you do acknowledge that the failure to raise the claim before the New York court of appeals constitutes default, and procedural default, by definition, means that a defendant has not or has failed to present his argument to the state courts in compliance with the procedural rules of the state. In other words, if, as you claim, the New York court of appeals had no jurisdiction to consider the unpreserved claim, how can it be the case that your client defaulted by not raising his claim before the New York court of appeals? Your Honor, when I was deciding whether to brief both of the issues, whether he had to exhaust his claim before the court of appeals and then whether he had to establish cause, I thought the stronger argument was showing cause. I don't think he had to exhaust his claim, but I realize that there have been contrary arguments on that. And so I chose the stronger one, which is that he had cause for not going to the court of appeals. It's a very similar argument. It's not identical. This court and other courts have certainly dissected that into two areas. But I think my stronger argument is that even if he was supposed to go to the court of appeals, it was still excusable because they had no jurisdiction. I don't think he had to go to the court of appeals in the first place. The problem, for me at least, maybe for us, is that that means that we are, in essence, deciding a question of what the New York court of appeals . . . what cases it will hear and what it won't. We're deciding whether the New York court of appeals, under its own practices and procedures, would do that and would have heard it. How certain do we have to be? How certain can we be that there was no jurisdiction? Don't they have to be the ones who decide whether they have jurisdiction? In this case, if you read the Constitution, if you read the criminal procedure law, if you go through the cases that have raised depraved indifference, they won't hear these cases unless it's been preserved. There have been cases that have gone up to the court of appeals and they said, depraved indifference, not preserved, we're not going to hear it. Not preserved in the trial court. Not preserved in the trial court, correct. They haven't heard these cases where they're not preserved. The law, in terms of what their jurisdiction is, is very clear. I don't think you're really deciding anything in terms of what they would do. I know that the prosecutor last . . . You're deciding what they would do procedurally or we're having to . . . There's no indication anywhere that they would have heard this case. There is no basis at all to say if it was not preserved, they would have heard these cases. The prosecutor last night asked permission to raise the case of People v. Patterson, which was from 1976, where they said, okay, well, our jurisdiction to hear cases, if there has been no objection, is there is a very, very narrow exception for mode of procedure errors. But a subsequent case to that said sufficiency of the evidence claims are substance, not mode of procedure. Excuse me. And if you don't . . . Yes. Just a matter of procedure, I hope so that I don't panic and you don't panic, that the presider will allow some additional time for you to address the question of actual innocence. Thank you. Is that all right? I appreciate that. You're nodding not to give more time. They don't know you as much as I do. Thank you. But in those cases, they said that the Court of Appeals jurisdiction to hear a case where there has not been preservation is very, very limited. And the Court of Appeals has said sufficiency of the evidence is not it. It's not included in a mode of procedure error. And there is absolutely no other basis to conclude that they would have heard this case where it was not preserved. They do not have jurisdiction. I don't think you're going out on a limb to say that they're excused. Yeah. And I don't think the prosecutor will point to a single case where there was no objection and yet the court heard the case on these depraved indifference and sufficiency of the evidence cases. If I can go back to the merits for a minute or would you prefer that I . . . Absolutely. Okay. The merits is the other aspect that really sets this case apart from other cases that I know this court has heard. And the merits is tied into the actual innocence in the gateway. The difference being the standard to be applied. One is for the insufficiency of the evidence, you apply Jackson v. Virginia in the light most favorable to the people. Any rational try or effect could have found him guilty. On the other hand, under the actual innocence gateway, it's a more lenient standard which is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. In this case, the jurors acquitted him of intentional murder, convicted him of depraved indifference murder. But in this case, there is no view of the evidence that this was not intentional. And I would submit intentional manslaughter. He was acquitted of the intentional murder. And I think the jury had good reason for doing that. Isn't there a preceding question as to whether a change in the law, as it's understood at least, can create actual innocence? Yes. I'm sorry. I was reversing it. Yes. Under Boozley, the Supreme Court held that a change in the law can constitute actual innocence. Later Supreme Court cases, I believe it was McQuiggan actually quoted Boozley as holding that. In that case, they did allow a constitutional violation that was not preserved to serve as actual innocence. But in that case, there was no new evidence. It was only a change in the law. So obviously, they're approving of the Boozley case to stand for the point that a change in the law can be actual innocence. The Supreme Court has said, as you know, for example, in the Murray case, that what you need to do is to correct a fundamentally unjust sentence. And here, it's uncontradicted at trial that Danielson and his other fellow gang members had previously plotted to kill Andrews for changing his gang affiliation. And Danielson concedes that the evidence shows that when he fired multiple rounds at the victim at arm's length, his actions were intentional and premeditated. So my question to you is, what is fundamentally unjust about his continued incarceration for the death of Mr. Andrews? Because in this case, when you say it's intentional, the jury acquitted him of the intentional murder. And I know that's happened in other cases, too. But here, going back and looking at the evidence, there was a really good reason for the jury to acquit. There was a strong foundation for them to acquit on intentional murder, which carries a much longer possible life sentence as opposed to manslaughter one, which at that time was a fixed sentence, five to 25 years. I think that changed a couple days ago. But in this case, you had witnesses that were so flawed. The two main witnesses, one of them admitted to committing the murder and then accused Danielson instead. The other one was an accomplice who fired the shot to his head when the guy was down and got a much reduced sentence. The so-called eyewitness who originally admitted to committing the murder, he was in an inpatient treatment center at the time of the murder. I'm sorry, at the time of the trial when he testified. This is not somebody who was stable. His statements were so inconsistent. And the statements between Green and Matthews, those two witnesses, they were inconsistent on the agreement where they supposedly agreed. One said it was, Green said at one point it was outside, another point he said it was in my room, another time he said it's outside of my room. How they got to the murder scene was not at all clear either. Green and Matthews testified that they hated each other, yet Matthews said, Green invited me to come to the gate to supposedly witness a murder, as it turns out. Green said, absolutely not, I wouldn't invite him to go anywhere. When they get to the scene and the groups divide, you have the people on the rock, and then you have the people who did the shooting. There was inconsistent testimony about who shot first, who had which gun. You just tend to doubt this, and even the shots that were fired, there was a strong basis for the jury to conclude that my client, Khalil, only intended to seriously injure. Green admitted on the stand he fired the fatal shot to the head. And the other shot that was fatal was to the abdomen. Green testified that Miller, the co-defendant who was acquitted based on the same testimony, that he was the one shooting at the abdomen and the torso. So you have the two fatal shots by the two other guys. That means the remaining shots were to the extremities, the feet, the buttocks, the thigh, skin, grazing. They were intentional, and that's why, if you look at the evidence, I have to agree that it would at least be intentional manslaughter. But there's not necessarily on my client's part an intent to kill. If you're standing arm's length away from somebody and you're firing at fingers, I don't think you're trying to kill them. You're trying to inflict serious bodily injury, but when you inflict serious bodily injury, you intend to do it, and the victim dies, that is manslaughter. That is not intentional murder, and the sentence is dramatic. And just because he's coming up for parole soon doesn't mean they're going to let him out. There have been a series of articles, the defendant's upstate, get let out later. There's racial aspects to this. There's no guarantee he's getting out soon. So what this is about, after 20 years of him pursuing every option he has, all he has left at this point is sufficiency of the evidence. And all he can do, and he has maintained his innocence, despite what he asked to concede because of the trial evidence. But he has maintained his innocence. All he has left at this point is to correct a sentence so that he doesn't face a potential life sentence anymore for the intentional murder for which he was acquitted, and for the depraved indifference for which there is no evidence whatsoever. This is totally different than the other cases you've had. It's not like Gutierrez, where there was a bar fight and somebody accidentally got stabbed and it was among people who didn't know each other. This is not one of those cases like Garbutt, where a girlfriend and an ex-boyfriend end up in a fight and it's very heated and he lashes out in blind anger, injuring, killing the girlfriend, but also accidentally slashing and endangering another person, his daughter. This is not the case in Belnier, in which the defendant fired, when he fired at the victim, was firing down a dark street and endangered the people there. And it's not like the case in Policano, where intent was negated by intoxication, where the guy had gone to a methadone clinic, had three to four bags of heroin, alcohol, all before the murder. The evidence here, there isn't evidence of intoxication. They said they were drinking and smoking when they got to the park, but there's no testimony about whether that was one minute or one hour. Nobody said these people were drunk. Nobody testified as to how much they had. There was absolutely no evidence showing that these people were drunk. That would negate the intentional aspect of this. So that's why I think it's different than the other cases as well. So in this case, you have a strong basis for not being actual innocents. And at this point, it just prevents him from serving a life sentence for something he did not commit. And because of the mess of the law, is the only reason the jury never got to consider intentional manslaughter. Thank you. Thank you. You submitted a motion to be able to cite a case and- Yes, your honor. You can cite any case you want. That doesn't mean we think it's necessarily relevant or not, so. Yes, your honor. May it please the court. Charles Wong for the state. Here, your honor, appellant committed murder. He engaged in acts that caused the victim's death. And he's not factually innocent of having committed murder. And it is not fundamentally unjust to have to affirm his murder conviction in this case. And in House Rebell and McQuiggan-Perkins, which were both decided after Boosley, the Supreme Court stated that the defendant needs to present new reliable evidence to present, to show that he is factually innocent.  Here he's, the jury acquits him of intentional murder, right? So what's the basis for placing on him the burden of proving his factual innocence of charged and acquitted conduct? Well, acquittal does not just mean that there was, the jury believed the evidence was legally sufficient. Does not necessarily mean he's actually factually innocent. And also, he needs to prove that he's factually innocent, not just intentional murder, but also of depraved indifference murder. And we believe he's not factually innocent of depraved indifference murder. And because another, based upon the evidence presented in trial, it would not, it would have, a reasonable juror could have believed that he actually showed his manslaughter was depraved indifference. There were multiple shots fired at the victim, but of those only two were fatal. One of them we know was fired by a co-defendant in green, which was a shot to the head. Now the second shot, second fatal shot, we don't know who fired them. But I'm concerned that the defendant filed multiple shots. And of the remaining shots, most of them, I mean, they were basically to the extremities, and were either grazing shots. It shows that, based upon that, a reasonable juror could have believed that defendant really did not possess an intent to kill. But it was just that he was just very upset, and was lashing out at his anger at the- Which shot then does have, has to be the shot fired with depraved indifference? I mean, it has to be one of the kill shots, right? I mean, otherwise he didn't kill him, period. So, I mean, if I wave a gun around and hit some poor innocent observer out there, to me that's depraved indifference, but not hit, but kill. Then it's depraved indifference murder because I killed the person. But if I'm just waving the gun around and hit the guy in the finger, hit the victim in the finger, that's not depraved indifference murder, because it's not murder. It's depraved indifference, but it ain't murder. This wasn't a one-on-one shooting. He was, there was three individuals, and there were multiple shots fired. No, and we, and he didn't, he, our petitioner here did not, did not fire the shot that hit the victim in the head, right? No, your honor. Yes, that's true, or no. He did not fire the shot to the head, your honor. It was fired. That obviously killed the person if he wasn't dead already. Yes, your honor. All right, so we're, that's aside from depraved indifference, right? That's off the table. I mean. So what shot depraved, in his depraved state, killed the guy? I mean. We don't know. We don't know which shots he might have fired, but he fired multiple shots and basically left the victim. Which shot did he fire? Did he fire a shot that killed the guy? It is unknown, your honor, which, who, which was the who, which of the other individuals fired the second fatal shot. Well, he's dead with the shot to the head, right? Yes, your honor. All right, so, and he didn't fire that shot. Did any other shot kill him before the shot to the head killed him? There was another shot that could have killed the victim. Could have, but didn't. I know when I shoot something in the head, I haunt, but that, don't, don't hold that against me that a shot to the head will almost invariably kill something. Yes, your honor, I mean, there wasn't another shot the medical examiner said would have been fatal under the circumstances without, even without the shot to the head. But. Was it? Well, it wasn't because, I mean, the. The shots to the fingers weren't, didn't kill him. No, yeah, but, I mean, there was a second, I believe it was a second shot, shot before the head that was inflicted to the body, which medical examiner said would have been fatal. Even without that, I mean, defendant here basically fired multiple shots and just left the victim there, he didn't, just left the, left the victim behind to die. And I mean, so under the circumstances, the jury could have, a reasonable jury could have believed that his actions were depraved, but. No question about depraved, but depravity has to be linked with killing. With doing something that kills. I mean, it is possible that his shot, I mean, he may not have fired the fatal shot, we don't know if he did or not, but he did act with other individuals who fired the fatal shots, and he engaged in it, I think, so. This is felony murder? He was only charged with depraving the friend's intention, he wasn't charged with felony murder. It's not like he was hanging out with a group of gang, they all knew they were gonna go out and shoot, and he joined them, and so therefore, he's guilty by virtue of whoever shot him, right? By virtue of somebody else that he was hanging with, because they were gonna go out and kill him, having killed the person. I mean, he acted in concert- That was never charged, he never convicted. He acted in concert with the other individuals, so even if he didn't fire the fatal shot, the shots fired by the other individuals  His actions combined with that of the others caused the victim's death, so he is guilty of depraving the friend's. But even before we get into the merits here, I mean, the issue is procedurally barred, because as it's been pointed out, defendant failed to raise the issue before on his direct appeal to the New York State Court of Appeals. Now, appellant argues that the issue was unpreserved at trial level, so it would have been futile, but the Supreme Court has said that the issue has to be raised before the state's highest court, and it is for the state's highest court to decide whether it has the jurisdiction to hear that case. The issue really is not, was it- Would you explain something that's very simple, and I should, maybe, do know the answer to, but it's important. And that is, let's assume that he was not required to raise it before the New York Court of Appeals, just assume that. Does that mean, no, I'm sorry, I'll do it the other way. Assume he was procedurally barred because he didn't, he was supposed to, and he didn't. Does that mean he does not have the actual innocence argument anymore? Does he have to win on the first argument as the procedure in order for him to win on the issue as to actual innocence because of the change in the New York law? No, and there's, to be considered separately, if we can establish that he is actually innocent, then the other procedure barred would not bar his review. But in this case, the change in law is not constitute, and does not allow him to get through the actual innocence gateway. The Supreme Court has held that it has to be new reliable evidence, and has cited a new reliable evidence. And although it has said it is not limited- It was not enough under Boozley. I mean, in both House v. Bell and McQuiggan, which was decided after Boozley, they never said that change in law constitutes new reliable evidence. They repeatedly referred to the decision in Shalhoub that it has to be a scope of scientific evidence, trustworthy eyewitness accounts, or a critical physical evidence. Now the case- It has to be fact and not laws, what you're saying. Yes, Your Honor, and they specifically stated it has to be factual sufficiency, factually innocent, not legally insufficient evidence. And change in law really, really goes only to, at most, maybe arguing that the evidence was legally sufficient. It does not prove that he is factually innocent, and as was stated before, the merits- Why should changes, actual innocence claims, based on a change in the law, be treated any differently? Because in change in law, it really only still does- I mean, if he wants to do it, he still has to establish a factual innocence. He has to present evidence that shows he's factual evidence, that he's factually innocent. He cannot just merely state there's a change in law, therefore I'm innocent, because that's really arguing that now, because change in law, the evidence is insufficient to prove my guilt. He's not claiming that he's factually innocent. He has not presented any evidence- If the question is whether the facts prove that he's innocent, now that we know the law is not what we thought it was, that the facts would have proved him guilty once upon a time, but now the facts would not prove him guilty, therefore he's actually innocent. That it's just, the facts, it's all about the facts, but it's also whether they lead to, or can lead to a verdict of guilt, given what we know now about what the law is and should have been there. That's really, but that still would just be arguing legal sufficiency, and the Supreme Court has also held that it's not just the charge that he was convicted of, it wouldn't just be depraved indifference. And as this court has also held, he has to prove that he is factually innocent of both intentional and he's factually innocent of charges of equal value. And although he was found, although the jury acquitted him of intentional murder, that just, again, that only goes to legal sufficiency, that does not show he's factually innocent. And this court has held in similar cases that no, regardless of what murder he may have committed, he still committed murder, so he's not factually innocent, and so he is not fundamentally unjust to affirm his conviction. What case? I believe it was Lyons v. Leclerc, 571 Federal, Approximate 34, where basically the defendant had been acquitted of intentional murder and found guilty of depraved indifference murder, and this court held that that does not mean he's factually innocent. He still committed murder, and basically denied that appellant's habeas petition. Do you have no further questions? State of course, affirmative. Sorry, could you just, the site for Lyons again, please? 571 Federal, Approximate 34. 534. 531 Federal, Approximate 34. 517 or 5? 571, I believe. 571. Yes. Thank you. Thank you. Ms. Schoenfeld. I'm going to try to be quick. Okay, going back to the actual innocence. Boozley cannot stand for anything but the fact that actual innocence can be satisfied by change of the law. It remanded the case in order for the district court to have fact finding on that very issue. If actual innocence could not satisfy one of the gateways, there would have been no reason for them to remand the case. Four districts, including this one, have interpreted Boozley like that. Fountain has done that, which was a decision in this court. And the third, the sixth, the eighth, and the ninth circuits have also all held that a change in the law can constitute actual innocence based on Boozley. The prosecutor does not cite to any, other than district courts, there is no circuit court that said you can only do this by new evidence and that actual innocence cannot be shown by change in the law. There's not a circuit court that has held that. There is one that hasn't decided, that's the seventh circuit. And there are this circuit and the four others that said, yes it can. So there are district courts that have held that, but not circuit courts. And those seem to be going in favor of the Boozley standard. Schlupp is just an- So then, so how do we work that? Walk me at least through what you want us to do. Send it back to the district court to say. I would either want you to send it back to the district court, because actual innocence can be shown by a change in the law. And then the district court would have a hearing similar to what we're doing here, because there is no new evidence. So I guess technically, given the passage of time, this court could also decide the issue. Or remand it back to the district court to decide whether actual innocence in this case, whether he has demonstrated actual innocence based on the facts in the record, based on the new law. And in fact- As viewed through, I think I'm going to paraphrase what I heard Judge Sack asking, because I think I agree with it. As viewed through the lens of the new law, of the new articulation of the law. Correct, which imposed, it was no longer an objective standard of risk. Now you need the mens rea. So the court of appeals made it very, very clear that depraved indifference murder applies to a very, very small subset of cases. Russian roulette, shooting into a crowd, driving a car down a street. It's not an intentional crime when you just shoot somebody at close range. Those are not the cases that depraved indifference was supposed to get. Up until this mess where the two crimes were being commingled all the time. If it wasn't intentional murder, it could be intentional manslaughter. Not that the facts are great either way, but the sentences are very, very different. So that's what we're facing. And that- If he had just fired at his fingers, just one bullet, but this was multiple rounds, wasn't it? This was multiple rounds. It's not clear how many, 40. So when you fire multiple rounds, what are you trying to do, just hurt somebody? It depends on where you're aiming. If you're aiming for the head, obviously you're trying to kill the guy. If you're aiming for the chest where the heart is, I think you're probably trying to kill the guy in that case too. And in this case, we've already disposed of the head one. That was definitely an intent to kill. The other wound that could have been fatal is the one that was somewhere in the torso area. And what you have is you have testimony by Green, who is supposedly the accomplice, who said the other guy, Miller, the one who got acquitted. He was the one who was aiming in the torso area. He didn't see where Khalil was aiming. And there is evidence that the rest of the injuries, yes, shooting somebody with a gun inflicts serious injury, even if you're shooting at the fingers, or the thigh, or the buttocks. But that is serious physical injury. It's not necessarily intentional murder if you did not intend to kill. And in this case, the jury came back finding him, acquitting him of intentional murder. And the other point that the prosecutor had raised that I wanted to address, the fact that you shoot somebody or inflict some injury and you leave them to die, that is not depraved indifference murder. The Court of Appeals in Suarez very specifically rejected the prosecutor's argument in that regard. It was with a boyfriend stabbing a girlfriend in the chest and other places, and then he left her. And she did die. And I can quote that, all right, Suarez's actions in stabbing the victim create a great, this was the prosecutor's argument that the court rejected. His actions in stabbing the victim create a grave risk of death. A risk that he consciously disregarded when he failed to seek medical assistance for the injuries he intentionally inflicted and instead left her to die. The court says that is not the law. If it were, every homicide, particularly intentional ones, would be converted to depraved indifference murders. This is not that case. This is intentional. I think intentional to inflict serious physical injury, and when the person dies, when that is your intent, it is a horrible crime, but it's manslaughter. You do not face life in prison, and that is the big difference here. And in going to your other questions about what to do, the two procedural hurdles that he can get over, he can either get over it by showing cause and prejudice, which is the default issue at trial and whether he had to raise it before the Court of Appeals, or he can show actual innocence so that it can be addressed on the merits. But either one of those would be sufficient, and I would ask that it either go back to the district court for a hearing on those facts, or that this court decide it based on the amount of time that's gone by. Thank you both. Very good arguments. The court will reserve decision. Thank you.